UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHEILA HELEN LASH,

        Plaintiff,                  CIVIL ACTION NO. 12-13472

vs.

                                     DISTRICT JUDGE LAWRENCE P. ZATKOFF

COMMISSIONER OF              MAGISTRATE JUDGE MONA K. MAJZOUB
SOCIAL SECURITY,

        Defendant.
_____/

## REPORT AND RECOMMENDATION

**I.**    **RECOMMENDATION:**  This Court recommends that Plaintiff's motion for summary judgment (docket no. 10) be denied, Defendant's motion for summary judgment (docket no. 13) be granted, and Plaintiff's complaint be dismissed.

**II.**    **PROCEDURAL HISTORY:**

Plaintiff filed an application for a period of disability and disability insurance benefits in October 2009, alleging disability beginning October 29, 2008. (TR 297-98). The Social Security Administration denied benefits and Plaintiff filed a timely request for a *de novo* hearing. On May 26, 2011 Plaintiff appeared with counsel in Detroit, Michigan and testified at a hearing held before Administrative Law Judge (ALJ) Myriam Fernandez Rice. (TR 731-65). Vocational Expert (VE) Jacquelyn Schabacker also appeared and testified at the hearing. In a decision dated July 15, 2011, ALJ Rice denied Plaintiff's claim after finding that she retained the residual functional capacity to perform a range of sedentary work. (TR 261-70). The Appeals Council declined to review the ALJ's decision and Plaintiff filed a timely complaint for judicial review. The parties filed cross

motions for summary judgment which are currently before the Court.

### III.  PLAINTIFF'S TESTIMONY AND MEDICAL EVIDENCE

#### A.  Plaintiff's Testimony

Plaintiff was forty-nine years old at the time of the administrative hearing. (TR 735). She testified that she had surgery on her right hip and claims that both of her knees were injured in an automobile accident in 2010. She reported that the automobile accident aggravated a pre-existing injury to her right hip. (TR 737). Plaintiff stated that her left foot swells and causes excruciating pain if she walks long distances. (TR 745). She also claimed that her back and elbow hurt. (TR 746). She uses a walker and claims she cannot stand without it.

Plaintiff lives at home with her husband and testified that her family assists with household chores. She testified that she is able to push the button on the coffee maker and chop vegetables for five to ten minutes at a time while seated. (TR 736). She stated that after five to ten minutes of vegetable preparation she needs to take a break and lay flat on her back to rest. (TR 736-38). Plaintiff reported that she lays down up to ten times a day for ten minutes to ninety minutes each time. She reported that she can sit for ten to fifteen minutes at a time before feeling pain. She stated that she was not in as much pain before the car accident. (TR 737).

Plaintiff testified that she takes Vicodin, Lortab, Mobic, and Flexeril. She reported that the medications cause her to have difficulty with concentration. (TR 740). She stated that she takes one to two naps each day lasting between thirty and sixty minutes. (TR 741). Plaintiff reported that she makes herself a cup of coffee in the morning when she wakes, reads a bit, accompanies her husband on errands, and shops at Meijers where she can ride in a cart. (TR 743-44).

#### B.  Medical Evidence

2

Defendant states that "[t]he ALJ included a comprehensive summary of the relevant facts on pages three through seven of her decision" and does not set forth a separate account of the medical record. (Docket no. 13 at 2). Likewise, Plaintiff's recitation of the medical evidence does not deviate in a significant way from the ALJ's summary. Therefore, having reviewed the record in full, the Court will adopt the summary of the medical evidence as set forth in the ALJ's opinion and will make references and citations to the medical evidence as necessary throughout this Report and Recommendation.

## IV.   VOCATIONAL EXPERT TESTIMONY

The VE testified that Plaintiff's past work as a cashier was unskilled light work, past work as a waitress was semi-skilled light work, and past work as a deli manager was skilled light work. (TR 761-62). The ALJ asked the VE to testify whether jobs were available for an individual with Plaintiff's age, education, and past work experience who was able to perform simple unskilled jobs requiring only one, two, or three step instructions with the following limitations: (1) lift or carry up to ten pounds, (2) walk with normal breaks for a total of one hour in an eight hour day, (3) stand for thirty minutes at a time, (4) sit with normal breaks for a total of seven hours in an eight hour day, (5) perform pushing and pulling motions with the upper and lower extremities within the ten pound weight restriction, (6) perform activities requiring bilateral, manual dexterity requiring both gross and high manipulation and hand reaching, and (7) limited to jobs that can be performed with a hand held assistive device for balance and ambulation. (TR 762, 764). The VE testified that the hypothetical individual could perform sedentary unskilled work as a surveillance system monitor, with 500 jobs in the Southeast Michigan region and 21,000 jobs nationally; document preparer with 250 jobs in Southeast Michigan and 30,000 jobs nationally; and order clerk, with 200 jobs in the

3

Southeast Michigan region and 16,000 jobs nationally. (TR 763).

The VE testified that if the individual needed to sit or stand at will and would not be off task more than ten percent of the work day, the individual could only perform the position of surveillance system monitor. (TR 763-64). The VE testified that work would be precluded if due to a combination of medical conditions associated with pain, the individual would be unable to engage in and sustain the work needed for an eight hour work day on a regular and consistent basis. (TR 764).

## V.     ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that although Plaintiff has not engaged in substantial gainful activity during the period from her alleged onset date of October 29, 2008 through her date last insured of March 20, 2010, and suffers from the severe impairments of chronic osteoarthritis, degenerative changes of her right hip, and osteotomy defect to the navicular bone in her left foot, she did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments. (TR 263-69). The ALJ concluded that Plaintiff was not under a disability as defined in the Social Security Act through the date last insured because there were jobs that existed in significant numbers in the national economy that Plaintiff could perform.

## VI.    LAW AND ANALYSIS

### A.     Standard Of Review

Pursuant to 42 U.S.C. § 405(g), the district court has jurisdiction to review the Commissioner's final decisions. Judicial review under this statute is limited to determining whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner's decision employed the proper legal standards. *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir.

1997). Substantial evidence is more than a scintilla but less than a preponderance; it is " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999).

### B.     Framework for Social Security Disability Determinations

Plaintiff's Social Security disability determination was made in accordance with a five step sequential analysis. In the first four steps, Plaintiff was required to show that:

1. she was not engaged in substantial gainful employment; and
2. she suffered from a severe impairment; and
3. the impairment met or was medically equal to a "listed impairment;" or
4. she did not have the residual functional capacity to perform her past relevant work.

20 C.F.R. § 404.1520(a)-(f). If Plaintiff's impairments prevented her from doing her past relevant work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education and past work experience to determine if she could perform other work. If she could not, she would be deemed disabled. 20 C.F.R. § 404.1520(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial

evidence that [plaintiff] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health & Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987) (citation omitted). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question if the question accurately portrays the plaintiff's physical and mental impairments. *Id.* (citations omitted).

**C.     Analysis**

Plaintiff argues that the ALJ's RFC assessment is not supported by substantial evidence since the evidence shows that she requires more restrictive limitations with sitting than the RFC imposed. She also argues that the ALJ's conclusion that she could perform a significant number of jobs is inconsistent with the evidence.

*1.     The RFC Assessment*

Plaintiff contends that the ALJ erred in adopting the RFC assessment made by a previous ALJ in relation to an earlier claim for benefits made by Plaintiff. The RFC states in relevant part that Plaintiff has the functional capacity to sit with normal breaks for a total of seven hours in an eight hour work day. Plaintiff argues that in the time since the original decision was issued her condition has deteriorated to such an extent that it is impossible for her to sit for up to seven hours in a work day. She argues that a letter signed by her treating physician, Dr. Scott, in February 2010 establishes that she is not capable of sitting for such a prolonged period of time. She also argues that a March 2011 medical source statement from treating physician Dr. Dubin shows that she is not capable of sitting for more than one hour out of an eight hour work day. (TR 722).

The letter at issue, written by Plaintiff's treating physician, was written for the purpose of excusing Plaintiff from jury duty. The letter states that Plaintiff has arthritis in her right hip and

difficulty standing or sitting for a prolonged period of time. (TR 518). It states that Plaintiff has been treating with a podiatrist for feet problems, and states that medication taken by Plaintiff to manage her conditions may affect her decision making skills.

The medical source statement referenced by Plaintiff was allegedly completed by Dr. Dubin in March 2011. The statement indicates that Plaintiff is limited to one hour of sitting in an eight hour work day and states that the limitations imposed in the assessment began on September 27, 2010, the date of the automobile accident. (TR 721-22).

The ALJ is responsible for determining a claimant's RFC. 20 C.F.R. § 404.1546(c). When determining the RFC, the ALJ must review all of the relevant evidence and consider each of the claimant's medically determinable impairments whether or not severe. 20 C.F.R. § 404.1545(a)(1), (2). The RFC is the most, not the least, a claimant can perform despite her impairments. 20 C.F.R. § 404.1545(a).

To qualify for disability insurance benefits, the claimant must demonstrate that she was disabled within the meaning of the Social Security Act and that her disability occurred during a time in which she enjoyed insured status under the Act. "Evidence of disability obtained after the expiration of insured status is generally of little probative value. " *Strong v. Soc. Sec. Admin.,* 88 Fed. Appx. 841, 845 (6th Cir. 2004) (citation omitted). "Record medical evidence from after a claimant's date last insured is only relevant to a disability determination where the evidence relates back to the claimant's limitations prior to the date last insured." *Abney v. Comm'r,* No. 507–394, 2008 WL 2074011 at *6 (E.D. Ky. May 13, 2008) (citing *Higgs v. Bowen,* 880 F.2d 860, 863 (6th Cir. 1988)).

Here, the ALJ reviewed the evidence of record and found that Plaintiff has severe

7

impairments involving her lower extremities. She identified those impairments as chronic osteoarthritis and degenerative changes of the right hip and osteotomy defect to the navicular bone in the left foot. (TR 267). The ALJ recognized that Plaintiff has undergone a variety of surgeries and treatments on her lower extremities, particularly with her right hip. She reviewed Dr. Scott's medical notes showing that Plaintiff had difficulty with range of motion of the right hip, a loss of right hip height, and difficulty with standing and spending any amount of time on her feet. (TR 268). She reviewed a medical note from Dr. Scott dated October 2010 that states that Plaintiff had a little bit of discomfort with palpitation of the cervical spine but otherwise normal cervical spine range of motion.

Next, the ALJ cited to specific evidence in the record that shows that Plaintiff had severe pain in her neck, shoulders, back, and knees in October and November 2010 but no tenderness to palpation of the lumbar spine and no acute fractures or dislocations as of December 2010. (TR 268). She noted that Plaintiff was involved in a motor vehicle accident in September 2010 and she reviewed medical evidence, including evidence from Dr. Scott and Dr. Durbin, that postdated the accident. (TR 268). The ALJ reviewed the prior RFC determination from the October 30, 2008 decision and concluded that there was very little that had changed with regard to Plaintiff's physical impairments between the time of the prior ALJ's opinion and the date last insured, with the exception that Plaintiff's obesity had actually improved. For that reason the ALJ adopted the RFC from the first hearing decision. *See Drummond v. Comm'r*, 126 F.3d 837, 842 (6th Cir. 1997).

The Court has reviewed the record in its entirety and finds that the ALJ's RFC determination and conclusion that Plaintiff's physical impairments did not substantially change since the time of the first RFC determination is supported by substantial evidence. Dr. Scott's letter was written for

8

the purpose of excusing Plaintiff from jury duty and merely states that Plaintiff has difficulty sitting. It also notes that Plaintiff is taking pain medication to treat her conditions and implies that she may not be an appropriate candidate for jury service as a result. The letter does not determine Plaintiff's ability to sit with normal breaks for six hours in an eight hour work day, enough to meet the physical exertion requirements for sedentary work. As for the March 2011 medical source statement, Dr. Dubin stated that the limitations documented in the assessment began the day of the automobile accident, September 27, 2010, a full six months after the date last insured. (TR 721-22). The Court concludes that the ALJ did not err in failing to assign controlling weight to these assessments for purposes of a disability finding.

With respect to Plaintiff's argument that Dr. Nasol's physical RFC shows that she can sit six hours and not seven hours in an eight hour work day, the assessment states that Plaintiff is capable of performing sedentary work. (TR 461). Sedentary work generally requires the claimant to be capable of sitting for a total of six hours in an eight hour work day with breaks at two hour intervals. Soc. Sec. Rul. 96-9p, 1996 WL 374185, at *3, *6. (TR 461). The ALJ incorporated the sedentary work requirement into the RFC and hypotheticals to the VE. The jobs identified by the VE in response to the hypothetical questions were sedentary positions. The Court finds that the ALJ's RFC assessment, which determined Plaintiff's functional capacity through the date last insured of March 20, 2010, is supported by substantial evidence.

*2. Significant Number of Available Jobs*

Next, Plaintiff argues that the ALJ erred in concluding that she could perform a significant number of jobs when the testimony of the VE showed that only 950 jobs existed in the local economy. Defendant contends in response that the ALJ did not rely on the VE's testimony to

determine the existence of a significant number of jobs, but instead applied the Medical-Vocational Rules, or Grids, to determine that Plaintiff was not disabled given her RFC.

The ALJ found that Medical-Vocational Rule 201.21 directed a finding of not disabled if Plaintiff had the RFC to perform the full range of sedentary work through the date last insured. (Docket no. 10, ex. 1). The ALJ then continued her assessment by finding that Plaintiff's ability to perform all or substantially all of the requirements of sedentary work was impeded by additional limitations. In order to determine the extent to which Plaintiff's limitations eroded the unskilled sedentary occupational base, the ALJ asked the VE if jobs were available in the national economy for an individual with Plaintiff's age, education, work experience, and RFC. The VE testified as to the availability of unskilled sedentary jobs numbering 950 in the Southeast Michigan region and 67,000 jobs in the nation.

The Social Security Act defines "work which exists in the national economy" as work that "exists in significant numbers either in the region where [the claimant] lives or in several other regions of the country." 20 C.F.R. § 404.1566(a). In fact, the Act is clear that "[i]t does not matter" if the work exists in the immediate area in which the claimant lives. 20 C.F.R. § 404.1566(a)(1). In *Harmon v. Apfel*, 168 F.3d 289 (6th Cir. 1999), the Sixth Circuit found that 700 jobs in the local economy and 700,000 jobs in the national economy constituted a significant number of jobs. In *Stewart v. Sullivan*, 904 F.2d 708 (6th Cir. 1990), the Court found that 125 jobs in the local geographic area and 400,000 jobs nationally constituted a significant number of jobs in the national economy. *Id.* at *3 (stating that "it is immaterial that [the number of relevant jobs] is a small percentage of the total number of jobs in a given area."). In *Nash v. Sec'y of Health & Human Servs.*, 59 F.3d 171 (6th Cir. 1995), the Court recognized that 70,000 jobs constituted a significant

10

number of jobs in the national economy. *Id.* at *3.

Here, the ALJ found that 950 jobs in the local region and 67,000 jobs in the nation constituted a significant number of jobs. The ALJ did not err in this conclusion. The Court finds that substantial evidence supports the ALJ's finding that a significant number of jobs existed that Plaintiff could perform.

**REVIEW OF REPORT AND RECOMMENDATION**:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court

determines that any objections are without merit, it may rule without awaiting the response.

Dated: June 28, 2013　　　　　　　s/ Mona K. Majzoub
　　　　　　　　　　　　　　　　MONA K. MAJZOUB
　　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE

### PROOF OF SERVICE

I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.

Dated: June 28, 2013　　　　　　　s/ Lisa C. Bartlett
　　　　　　　　　　　　　　　　Case Manager